UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER WILLIAMS, | No. ED CV 05-461-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 8, 2005, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on August 11, 2005. Pursuant to the Court's order, the parties filed a Joint Stipulation on April 12, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on October 16, 1947. [Administrative Record ("AR") at 107.] He has completed high school and three years of college, but has no relevant past work experience. [AR at 16, 119.] Plaintiff received Supplemental Security Income ("SSI") from April 1, 1981, until May 1, 2000, for his psychiatric disability, schizophrenia.[1] [AR at 65-70, 234.]

Following a "Continuing Disability Review," conducted on May 1, 2000, plaintiff's condition was considered to have improved to the extent he was able to work. Id.  As a result, his SSI payments ceased. [AR at 13.] Plaintiff appealed the decision, and a hearing was held before an Administrative Law Judge ("ALJ") on October 5, 2001. Following the hearing, the ALJ affirmed the decision to deny benefits. [AR at 13, 65-70.]

On May 23, 2002, plaintiff filed a new application for SSI payments in which he alleged that he has been unable to work since 1970 due to mental problems, including schizophrenia, and physical arthritic problems, including back, knee, foot and shoulder pain.[2] [AR at 107-09, 113.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an ALJ.

A hearing was held on October 6, 2003, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 20-51.] A medical expert also testified. [AR at 23-25, 31-33, 39-48.] A supplemental hearing[3] was conducted on May 25, 2004, at which plaintiff appeared with counsel, and at which a vocational expert testified. [AR at 54-61.] On August 25, 2004, the

---

[1]  Schizophrenia is a "disorder that lasts for at least 6 months and includes at least 1 month of active-phase symptoms (i.e., two [or more] of the following: delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior, negative symptoms)." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 298 (4th Ed. 2000). Plaintiff met the requirements of Listing 12.03A and B in April, 1981. [AR at 66.]

[2]  At the hearing, the alleged onset date was amended to May 23, 2002. [AR at 42.]

[3]  The ALJ ordered a supplemental hearing to acquire additional medical records from plaintiff's chiropractor. The ALJ also ordered "a neuro with the head and neck x-rays, and an ortho with left knee and low back x-rays." [AR at 49-50.]

1  ALJ determined that plaintiff was able to perform medium work[4] with certain mental limitations,
2  and thus was not disabled. [AR at 16-17.] When the Appeals Council denied review on April 27,
3  2005, the ALJ's decision became the final decision of the Commissioner. [AR at 4-6.]

### III.
### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the ALJ. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.
### EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving social security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is

---

[4] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of non-disability is made and the claim is denied.  <u>Id.</u>  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u>  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[5] to perform his past relevant work; if so, the claimant is not disabled and the claim is denied.  The claimant has the burden of proving that he is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257. If the claimant meets this burden, a <u>prima facie</u> case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the

---

[5]    Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since the alleged onset date of his disability. [AR at 13, 16.] At step two, the ALJ concluded that plaintiff "has the following medically determinable severe impairments: personality disorder not otherwise specified, alcohol abuse, and mild wedging of T12." [AR at 15, 16.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. <u>Id.</u> At step four, the ALJ concluded that, "with drug/alcohol addiction in place," plaintiff maintains an RFC in which he can "perform medium work which consists of moderately complex tasks in a habituated setting, with no hypervigilance, no responsibility for safety operations and no intense interpersonal relationships." <u>Id.</u> The ALJ also determined that plaintiff could "stand and/or walk for 6 hours of an 8-hour workday, sit for 8 hours with the ability to change position every 2 hours, and lift and/or carry 50 pounds occasionally and 25 pounds frequently...[and]...occasionally climb stairs."[6] [AR at 15.] Since plaintiff has no past relevant work, the ALJ proceeded to step five of the sequential evaluation process. At step five, using the Medical-Vocational Guidelines of Appendix 2, Subpart P of the Regulations and the vocational expert's testimony, the ALJ concluded that plaintiff was capable of performing jobs that exist in significant numbers in the national economy. [AR at 16-17.] Based on this five-step analysis, the ALJ determined that plaintiff was not under a disability as defined by the Social Security Act. <u>Id.</u>

/

/

/

---

[6]   The ALJ noted that plaintiff's "limitations would be less if he were to abstain" from alcohol. [AR at 16.]

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ did not fairly and accurately summarize the evidence because he failed to consider (1) the opinions of disability from his treating psychiatrists; (2) the clinical assessments of his treating therapists; and (3) the third party questionnaire completed by his mother. Joint Stipulation ("Joint Stip.") at 2. The Court agrees with plaintiff's contentions and orders that the ALJ's decision be reversed and the matter remanded for further proceedings.

**A.   THE ALJ IMPROPERLY REJECTED THE OPINIONS OF PLAINTIFF'S TREATING PSYCHIATRISTS**

Plaintiff maintains that he suffers from both mental and physical impairments.[7] Specifically, he alleges schizophrenia, in conjunction with arthritis, back, knee, feet and shoulder pain. [AR at 113.] Plaintiff asserts that the ALJ did not appropriately consider the schizoaffective disorder diagnosis of his treating psychiatrists. Plaintiff also argues that the ALJ's failure to consider the low Global Assessment of Functioning ("GAF")[8] scores assessed by these psychiatrists was improper. Plaintiff's conclusions are premised on the notion that the ALJ: (1) did not expressly discuss the schizoaffective disorder diagnosis of Dr. W. Lawrence, treating psychiatrist; (2) improperly disregarded the schizoaffective disorder diagnosis and work assessment form of treating psychiatrist Dr. Guia Montenegro; and (3) did not provide "specific and legitimate" reasons for discrediting their diagnoses and opinions of functional ability. Joint Stip. at 3-4. Thus, plaintiff concludes that by these omissions, the ALJ impermissibly conducted a selective review of the evidence in the record. Joint Stip. at 2-3.

---

[7]   As plaintiff in the Joint Stipulation mainly contests the ALJ's findings only as they relate to his mental impairment, the Court will not address at length the physical impairment evidence presented in the record.

[8]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. DSM-IV at 32.

When evaluating medical opinions, Ninth Circuit law distinguishes among three different types of medical sources: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). Lester, 81 F.3d at 830. The opinion of a treating physician is to be given greater weight and consideration than the opinion of an examining physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

Despite this presumption of special weight, an ALJ is not bound to accept the opinion of a treating physician. Where a treating physician's opinion is not contradicted by another doctor, it may be rejected by the ALJ, *but only* for "clear and convincing reasons." See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002). However, if the ALJ chooses to reject the opinion of a treating physician that is controverted by an examining physician, as was done here, he *must* provide "specific and legitimate reasons" for doing so. Lester, 81 F.3d at 830; see Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983) ("[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.").

The record indicates that on October 2, 2000, Dr. Lawrence[9] made a diagnosis of schizoaffective disorder and assessed plaintiff with a GAF score of 45.[10] [AR at 184.] Dr. Lawrence characterized his impression of plaintiff in a Client Plan Care Necessity Report in which he assessed his dysfunctional level as "severe." [AR at 345.] Dr. Lawrence noted that plaintiff displayed "disorganized thinking, alcohol use, hallucinations, depression." Id. Dr. Lawrence also predicted a "probability of a significant deterioration in an important area of life functioning," if clinically planned interventions were not instituted. [AR at 345-46.] Furthermore, Dr. Lawrence's

---

[9] Dr. Lawrence treated plaintiff from October 2, 2000, to April 23, 2001, at the San Bernardino Department of Behavioral Health. [AR 184-92.]

[10] A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). DSM-IV at 34.

interdisciplinary notes show that plaintiff is "tangential if left alone," "disorganized," and "refers to religious and other delusions (hearing Elvis Presley) but will not answer my questions about these." [AR at 338.] Despite the presumption that Dr. Lawrence's opinion is entitled to "special weight," the ALJ wholly fails to mention Dr. Lawrence in his opinion. [AR at 12-17.]

On August 30, 2001, Dr. Montenegro[11] also diagnosed plaintiff with schizoaffective disorder and assessed a GAF score of 41. [AR at 402.] Additionally, Dr. Montenegro completed a Work Capacity Evaluation form on September 24, 2003, in which she determined that plaintiff was "markedly limited" in 9 out of 16 functions and "extremely limited" in 5 functions. [AR at 266-67.] The ALJ briefly discusses Dr. Montenegro in his decision to the extent that he found her work evaluation form to be "conclusionary" and "not based on objective findings." [AR at 15.] The ALJ draws this conclusion, however, without expressly considering Dr. Montenegro's and Dr. Lawrence's consistent diagnoses of schizoaffective disorder or providing reasons, if any, for his dismissal of them. [AR at 12-17.] The Court notes that Dr. Montenegro's functional assessment in the form is supported by approximately three years of treatment notes [AR at 195-205], which include references to plaintiff being "tangential at times", "delusional", experiencing "some depression," and being "violent with his mother." [AR at 195, 203, 196-97.] Additionally, during treatment plaintiff reported "mood swings," "some depression" and "some paranoia," but consistently denied his schizoaffective disorder. [AR at 195.] Dr. Montenegro opined that plaintiff often "minimizes symptoms and doesn't see them as a problem." [AR at 195-205, 266-88.] Despite this evidentiary support, the ALJ still rejected her form as lacking support.

Accordingly, the ALJ did not follow the aforementioned standard for reviewing the opinions of a treating physician. He failed to expressly consider Dr. Lawrence's diagnosis, did not mention the GAF scores,[12] and inappropriately dismissed Dr. Montenegro's work evaluation form. Instead,

---

[11] Dr. Montenegro treated plaintiff from 2001-2004 at the San Bernardino Department of Behavioral Health. [AR at 195-205, 266-88.]

[12] Defendant argues that the ALJ's decision to overlook these assessments is "harmless" because GAF scores are "[i]ntended to be used for clinical diagnosis and treatment...[and]...are not directly correlative to Social Security Assessments." Joint Stip. at 6. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (if harmless error occurred through the administrative

8

the ALJ merely restated the findings of Dr. Linda Smith, the consultative psychiatric examiner, Dr. Robert Moore, the consultative neurological examiner and Dr. Joseph Malancharuvil, the testifying non-examining medical expert.

Specifically, the ALJ cited Dr. Smith's diagnosis of bipolar affective disorder[13] in which she determined that plaintiff would be only "mildly impaired in his ability to work." [AR at 14, see also 243-47.] He also noted Dr. Moore's neurological evaluation in which he assessed plaintiff as being "capable of standing and walking for 6 hours of an 8-hour workday, in two-hour intervals." [AR at 14, see also 308-11.] Lastly, the ALJ cited Dr. Malancharuvil's diagnosis of a "personality disorder not otherwise specified, and alcohol abuse," and "depression, which is not severe." [AR at 14, see also 39-44.] He also mentioned Dr. Malancharuvil's functional assessment, which indicated that plaintiff was only "mildly restricted in maintaining social functioning and concentration, persistence or pace," and could "perform work which consists of moderately complex tasks in a habituated setting, with no hypervigilance, no responsibility for safety operations and no intense interpersonal relationships." [AR at 15, see also 39-43.]

At the conclusion of these summaries, the ALJ stated that he "agrees with the opinions of the Medical Experts and State Agency physicians." Id. The Court notes that the opinions of consultative examiners, based on independent clinical findings, may qualify as substantial evidence. However, the Court finds the ALJ's reliance on them in this case to be undercut by the implicit rejection of Dr. Lawrence's diagnosis and dismissal of Dr. Montenegro's work assessment form. See Andrews, 53 F.3d at 1041; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989);

---

process, the claimant is not entitled to a remand). But although GAF assessments do not determine disability, they may serve as further psychiatric evidence regarding the claimant's ability to function. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ noted claimant's GAF score of 70 as one of his specific reasons in making a finding of non-disability).

[13] Bipolar affective disorder is a mood disorder (unlike schizoaffective which is a schizophrenic and psychotic-type disorder). The essential feature of bipolar affective disorder is a clinical course that is characterized by the occurrence of one or more manic episodes or mixed episodes. Often individuals have also had one or more major depressive episodes. In addition, the episodes are not accounted for by schizoaffective disorder and are not superimposed on schizophrenia. See DSM-IV at 382-83.

Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).  "[A]n ALJ's finding cannot be said to be supported by substantial evidence when important medical evidence is virtually ignored without explanation."  Parks v. Sullivan, 766 F.Supp. 627, 634 (N.D. Ill. 1991) (citing Garfield v. Schweiker, 732 F.2d 605, 609 (7th Cir. 1984) (an ALJ's conclusion was not supported by substantial evidence when he ignored the two later reports of a doctor, relying only upon the first doctor's report)).  Because the ALJ ignored Dr. Lawrence's medical opinion and insufficiently dismissed Dr. Montenegro's work assessment, the Court finds the ALJ's decision to be deficient.  Compare Hammock, 879 F.2d at 502 (ALJ's failure to offer *any* reasons as to why he disregarded the claimant's treating physician's opinion was legal error), with Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ's *specific* statement rejecting claimant's treating physician's opinion because it was based only on the claimant's subjective complaints was specific and legitimate).

For the foregoing reasons, the Court finds the ALJ's dismissal of the treating psychiatrists' opinions improper.  Remand is appropriate in order for the ALJ to expressly consider the medical diagnoses of Dr. Lawrence and of Dr. Montenegro, including Dr. Montenegro's work evaluation form.  In the event that the ALJ rejects plaintiff's treating source opinions, he must provide specific and legitimate reasons for doing so.  Lester, 81 F.3d at 830; Murray, 722 F.2d at 502.

## B.  PLAINTIFF'S REMAINING CLAIMS

Plaintiff also alleges that the ALJ did not appropriately consider the opinions of his treating therapists or his mother's third party questionnaire.[14]  The ALJ has a duty to consider evidence from "other sources."[15]  This information is considered to be "qualified evidence" that the ALJ must

---

[14]  Therapist Clarence Brooks, LCSW, treated plaintiff on September 18, 2000, and evaluated plaintiff with a "severe" dysfunction rating.   Memory Rush, MSW, subsequently treated plaintiff on August 30, 2001, and also assessed a dysfunction rating of "severe." [AR 347-50, 401-04.] Betty M. Graham, plaintiff's mother, completed a third party questionnaire on December 12, 2002. [AR at 159-64.]

[15]  "Other sources include, but are not limited to (1) Medical sources...(for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and *therapists*;... and (4) Other non-medical sources (for example, ... *parents* and other care givers.)." 20 C.F.R. § 416.913(d) (emphasis added).

10

take into account. See Sprague, 812 F.2d at 1231-32. Specifically, the ALJ must review this evidence and express germane reasons for discounting it if he chooses to reject it. Smolen, 80 F.3d at 1288-89; see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1983) (if the ALJ expressly determines to disregard such testimony he must give reasons that are germane to each witness); Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968 (9th Cir. 2000) (ALJ erred because he did not consider letters that plaintiff's friends and ex-employers had submitted).

Here, the ALJ did not consider the above opinions and failed to provide reasons for not doing so. Under the relevant standard, plaintiff's mother's third party questionnaire is a competent source of evidence that the ALJ cannot disregard without comment. See Sprague, 812 F.2d at 1232 ("[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence;" "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work"); 20 C.F.R § 416.913(d); Dodrill, 12 F.3d at 919; Smolen, 80 F.3d at 1289; Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988).

Similarly, while the ALJ is entitled to afford the opinions of the treating therapists less weight or discount them completely, he must still expressly state why he has done so in his decision. See 20 C.F.R. § 416.927(d); Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996) (holding that the ALJ failed to set forth specific and legitimate reasons for discounting the examining psychologist's opinion in favor of the opinion of a non-examining medical advisor); Ryan v. Heckler, 762 F.2d 939 (11th Cir. 1985) (remanding case where the ALJ did not explain why he rejected the evidence presented by, among others, claimant's counselors). Therefore, the Court finds that the ALJ erred by not considering this evidence and providing express reasons for its dismissal.

/
/
/
/

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate because the ALJ failed to consider the opinion of plaintiff's treating psychiatrist, Dr. Lawrence, and did not provide any legally sufficient reasons for doing so; he also inaccurately evaluated the analysis of Dr. Montenegro.  On remand, the ALJ should re-examine Dr. Lawrence's diagnosis and Dr. Montenegro's conclusions and, if he decides to rely on other evidence, provide specific and legitimate reasons for dismissing this evidence. Furthermore, the ALJ on remand should consider and address the evidence provided by plaintiff's mother and plaintiff's treating therapists.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 18, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE